IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWARD R. COSS, JR., | : | CIVIL ACTION NO. **1:01-CV-00878** |
|  | : |  |
| Petitioner, | : | (Judge Caldwell) |
|  | : |  |
|  | : | (Magistrate Judge Blewitt) |
| v. | : |  |
|  | : |  |
| JAMES P. MORGAN, et al., | : |  |
|  | : |  |
| Respondents | : |  |

**SUPPLEMENTAL MEMORANDUM OF LAW**
**to Augment Respondents' Memorandum of Law**
**Filed November 22, 2004**
In Support of Respondents' Motion to Dismiss
Under the Provisions of 22 U.S.C.A. § 2244(b)(1) &  § 2244(d)
or, in the Alternative, Motion for Extension
of Time to Answer and for Other Relief

The purpose of this Supplemental Memorandum of Law is to develop portions of legal argument which, because of time constraints, were developed less fully than they might have been in respondent's previous Memorandum of Law.

In the introductory portion of respondents' *Argument* in their previous Memorandum of Law, beginning at page 7, the following observations were made:

1

"©.)   A third factor emerges as an equally obvious procedural complication, underscored in part by the last portion of the final sentence quoted from Judge Blewitt's order dated October 13, 2004 (Doc 26):

". . . and file one, all-inclusive § 2254 petition within the one-year statute of limitations period prescribed by the Antiterrorism Effective Death Penalty Act of 1996."

"The matter of timeliness emerges as a question of vital importance, and the increasingly elusive analysis of procedural events in this old and procedurally convoluted case significantly bears upon the question of timeliness.

"If the date of the Supreme Court decision in petitioner's case has relevance, that date occurred in the spring of 2001, well over a year previous to September 30, 2004, the date upon which petitioner's amendment to his habeas corpus petition was filed.

"More relevant is the date upon which, according to the manner of measurement set forth in 28 U.S.C. § 2244(d)(1), any habeas corpus petition to have been filed by Mr. Coss <u>should</u> have been filed.  Once that date, which can be determined from the well pleaded allegations of the petition coupled with judicial notice of published court decisions , has in fact been determined, the sole remaining task will be to examine petitioner's pleadings to see whether he has pleaded the existence of sufficient exclusionary periods, as defined in 28 U.S.C. § 2244(d)(2) so as to enable petitioner's filing date of May 17, 2001 to be regarded as falling within the statutory limits of acceptable timeliness.

"These timeliness questions as well as related questions that become apparent, will each be appropriately addressed by respondents in the *Argument* segment of this Memorandum of Law."

[In the process of examining, in this Supplemental Memorandum of Law, into whether Mr. Coss has pleaded the possible existence sufficient exclusionary periods which would bring 28 U.S.C. § 2244(d)(2) into play, the absence of such exclusionary periods will become affirmatively evident.]

After respondents' Memorandum had been timely filed it was discovered, upon review, that a segment of respondent's argument seemed not to have been adequately developed. The under-developed argument involves the following segment of the introductory statements just quoted:

"More relevant is the date upon which, according to the manner of measurement set forth in 28 U.S.C. § 2244(d)(1), any habeas corpus petition to have been filed by Mr. Coss should have been filed. "

Respondents' present purpose is to detail, with clarity, just how the "...manner of measurement set forth in 28 U.S.C. § 2244(d)(1),.." ought to be applied to the facts of this case in order to determine, correctly, the date upon which any habeas corpus petition to have been filed by Mr. Coss should have been filed.

The latest date upon which Mr. Coss' habeas corpus petition should have been filed is not later than March 2, 1990.[1]

---

[1]   Simply calculated, Coss' two year sentence was imposed on January 30, 1987; but (even though Coss did not file a direct appeal) the judgment of sentence did not become "*final*" until after the expiration of the thirty (30) days provided by Pennsylvania law for the filing of an appeal.

(continued...)

3

The process through which this date of March 2, 1990 can be determined with reasonable precision begins by applying the provisions of 28 U.S.C. § 2244(d)(2) to the time limitation established by 28 U.S.C. § 2244(d)(1)(A).

Although 28 U.S.C. § 2244(d)(1) has four subsections: (A) through (D) inclusive, subsection (A) is the only one applicable. Subsections (B), ©) and (D) cannot be applied to the facts of Coss' case.

---

[1](...continued)
The 30-day appeal period expired on March 2, 1987.

Two years following March 2, 1987 Coss had fully served his two year sentence; he had finished serving his sentence a month or more earlier. Accordingly, he was no longer "in custody" (and thereby–as will shortly be shown--no longer "*eligible*"for post-conviction relief) under the then-applicable PCHA which formerly, and in parts here pertinent, provided:

> "§ 9543. Eligibility for relief
>     to be eligible for relief under this subchapter, a person must initiate a proceeding by filing a petition under section 9545 (relating to filing and content of petition) **and** must prove the following: (Emphasis supplied.)
>         *           *           *
>     (2)   that he **is incarcerated** in this Commonwealth under a sentence of death or imprisonment or on parole or probation. (Emphasis supplied.)
>         *           *           * "
> 
>                       PCHA § 3, 19 P.S. § 1180–3. (as then in force in 1987)

Neither was Mr. Coss "in custody," for purposes of the federal habeas statute, 28 U.S.C. § 2254(b)(1) after his two-year sentence had been fully served. *See*,Lackawanna County District Attorney v. Coss, 532 U.S. 394, 121 S.Ct.1567, 149 L.Ed.2d 608 (2001).

Therefore, the period for potential exclusion of time ended no later than March 2, 1989. When the one-year period of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) is added, we derive the latest possible end-date of the limitations period as being March 2, 1990.

The details undergirding the total, overall and all-encompassing validity of this conclusion will be developed in the text on the subsequent pages of this Supplemental Memorandum of Law.

28 U.S.C. § 2244(d)(1)(A) provides:

> "**(d)(1)**. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (**A**) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

Any timeliness determination would be less than fully precise and complete if the "saving" provisions of 28 U.S.C. § 2244(d)(2) were not considered. Section 2244(d)(2) provides:

> "(**2**) The time during which a properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment is pending shall not be counted toward any period of limitation under this subsection."

It therefore will next be demonstrated that the

> ". . . time during which [Coss'] application for State post-conviction . . . relief with respect to the pertinent judgment [remained] pending, . ." (*See*, Section 2244(d)(2))

does not alter the fact that Coss' federal habeas petition should have been filed not later than March 2, 1990.

The beginning and end dates of Coss' application for State post-conviction relief would *both* seem essential, but in actuality the beginning date is of little

importance so long as the end date is known or can be determined; and the end date of Coss' PCRA application (the date upon which his PCRA application could no longer be considered as "pending") can be determined quite readily .

The end date of Coss' PCHA/PCRA application had to have coincided exactly with the end date of Coss' two-year maximum sentence. When Coss' two year maximum had been fully served (or had otherwise expired) he was no longer "in custody." On the date that Coss was no longer "in custody" under his two-year sentence, (and, therefore, no longer eligible for PCRA relief) his then-pending PCRA application "*self-destructed.*"

These two concepts: "eligibility" and "self-destruction" will be examined separately and in turn.

A little more than thirteen years previous to January 30, 1987, the date upon which Coss was sentenced, the Superior Court recognized and plainly announced the four statutory requirements upon which every PCHA petitioner's *eligibility* for PCHA (now[2] PCRA) relief depends:

> "To be eligible for relief under the Post Conviction Hearing Act a person must show: that he has been convicted of a crime; that he is incarcerated in a Pennsylvania penitentiary, or on parole or probation; that his

---

[2] After the date of Coss' conviction and sentence in 1987, the name of the Post Conviction Hearing Act (PCHA) was changed through intervening legislative amendment; it is now known as the Post Conviction Relief Act (PCRA).

imprisonment resulted from an abridgement of a right guaranteed by the constitution or laws of the United States or Pennsylvania; and that the error resulting in his conviction and sentence has not been fully litigated or waived. PCHA § 3, 19 P.S. § 1180–3." Commonwealth v. Campas, 232 Pa.Super. 347, 350, 331 A.2d 670, 671 (1974).

If, as just noted, a petitioner's eligibility for post conviction relief is dependent upon his being "in custody", one might ask: "When a person loses his eligibility by reason of his no longer being 'in custody,' what happens to his *entitlement* to post conviction relief?" The answer is simply that his entitlement to post conviction relief "self-destructs." It is as if the entitlement to post conviction relief had never existed; accordingly, and as a matter of simple logic, the post conviction relief petition can no longer be regarded as "pending."

The notion of a remedy which "self-destructs" is not original; The Supreme Court of the United States approvingly recognized the notion in Griggs v. Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, ___ L.Ed.2d ___. In that decision the Supreme Court reversed a decision of the Third Circuit which had interpreted a change in the federal appellate rules, that occurred in 1979, as continuing to allow a prematurely filed notice of appeal to support an appeal and be acted upon following a district court's disposition of a Rule 59 motion which had been pending and undecided at the time the notice of appeal was filed. The *Griggs* opinion observed:

"Professor Moore has aptly described the post-1979 effect of a Rule 59 motion on a previously filed notice of appeal: ' The appeal simply self-destructs.' 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.12 [1], at 4-65 n. 17 (2d ed. 1982). Moreover, a subsequent notice of appeal is also ineffective if it is filed while a timely Rule 59 motion is still pending. See, 16 C. Wright, A. Miller, E. Cooper & E. Gressman Federal Practice and Procedure § 3950 (1982 Supp,). The United States Court of Appeals for the Third Circuit has taken the position that, notwithstanding the 1979 Amendments, it retains jurisdiction under Fed. Rule App. Proc. 2 to waive the conceded defects in a premature notice of appeal. Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 882, n. 2. (CA3), cert. denied, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). We disagree. The notice of appeal filed in this case on November 19, 1980, was not merely defective, it was a nullity. Under the plain language of the current rule, a premature notice of appeal 'shall have no force and effect'; a new notice of appeal 'must be filed.' In short, it is as if no notice of appeal had been filed at all. And if no notice of appeal is filed at all, the Court of Appeals lacks jurisdiction to act. . . ."    Griggs v. Consumer Discount Co., supra.

The rationale pursued in *Griggs* is applicable here; and can be mildly paraphrased, beginning with the final lines just quoted from *Griggs*: 'And if Coss has become not eligible [by reason of his release from custody] the Court of Common Pleas lacks jurisdiction to act.'

The remedies provided by the PCHA/PCRA are *purely* statutory; such remedies are not constitutionally required and did not exist at common law[3].

---

[3]   "[Each State has created mechanisms for both direct appeal and state postconviction review, see L. Yackle, Postconviction Remedies §§ 1, 13 (1981 and Supp.2000), even though there is no constitutional mandate that they do so, see *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no constitutional right to state postconviction review). . . ."  Lackawanna County District Attorney v. Coss, supra.

8

Because the PCRA remedy is a new remedy--one which did not exist at common law--a remedy which is purely a creation of the legislature, the PCRA statute must be construed in the manner directed by 1 Pa.C.S.A. § 1504[4] and the terms of the PCRA statute interpreted in a manner which is consistent with the manifest intent of the General Assembly, as directed by the provisions of 1 Pa.C.S.A. § 1901, f.f.

When the four "eligibility" requirements presently set forth in 42 Pa.C.S.A. § 9543(a)(1)-(a)(4) (formerly 19 P.S. § 1180–1, f.f.) are construed in the manner required by 1 Pa.C.S.A. § 1504, recognizing, as the court recognized in Lurie v. Republican Alliance, 412 Pa. 61, 192 A.2d 367 (1963), that the directions of the legislation must be strictly pursued and such remedy is exclusive, it becomes plain that those four "eligibility" requirements are both substantive *and* jurisdictional.  It

---

[4]    "**§ 1504.   Statutory remedy preferred over common law**

"In all cases where a remedy is provided for or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted or anything be done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect."

Recent decisions explain and simplify the meaning of the latter portion of the statute following the words: "... and no penalty shall be inflicted or anything be done ..." etc., by stating that such language merely means that the remedy created by the statute is exclusive; *see*, Lurie v. Republican Alliance, 412 Pa. 61, 192 A.2d 367 (1963) (Where a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive).

is the prisoner's pleading and proof of those four "eligibility" requirements which vests the Pennsylvania courts with subject matter jurisdiction of the PCRA proceeding because unless the directions of the PCRA legislation are strictly pursued, the courts have no power to act.

This powerlessness of the courts to act (except in the manner strictly prescribed by the legislature) arises because, in the language of Lurie v. Republican Alliance, supra, 'the remedy [of the PCRA statute] is exclusive.' 1 Pa.C.S.A. § 1504.

The concept of recognizing that all the conditions established by the General Assembly in a statute which creates a remedy must be met before the court (in the jurisdictional sense of the word "power") has the power to act is not a new concept; *see*, Moyer v. Kirby, 14 Serg. & Rawle 162, 1826 Pa.Lexis 42 (1826), construing the former statute from which 1 Pa.C.S.A. § 1504 derives:

> ". . . [U]pon a new statute which prescribes a particular remedy, no remedy can be taken but the particular remedy prescribed by the statute. The act gives no power, but to levy the damages by the warrant of the justices on the goods and chattels; none to touch the body. The goods of the tenant are liable to distress and sale, but there is no power to arrest him or to take his body."
> Moyer v. Kirby, supra, 14 Serg. & Rawle at 165

We see, therefore, that not only are the eligibility requirements of the PCRA substantive; they must necessarily be regarded as *jurisdictional* as well.

Because the "eligibility" requirements of the PCRA statute must be regarded as jurisdictional, the matter of pleading and proof of eligibility does more than merely entitle a PCRA petitioner to some appropriate award of PCRA relief.

"Eligibility" is foundational to all his post conviction rights.

Unless the PCHA/PCRA petitioner pleads and proves, as required by 42 Pa.C.S.A. § 9543, all four of the factors upon which his "eligibility" is statutorily predicated, the PCRA courts have no jurisdiction—they lack the *power*—to award PCRA relief of any sort. Once Coss' ability to prove that he was in custody had been lost by reason of Coss' two year sentence having been fully served, his "eligibility" to be awarded any post conviction relief simply self-destructed. Just as the notice of appeal in *Griggs*, although still physically in the court files, had to be regarded as non-existent, so too, the post conviction petition of Coss, although still physically in the court files, had to be regarded as non-existent. Once Coss' sentence had been fully served it was no longer possible for Coss to prove that which the statute required him to prove: that he was in custody. And because "custody" is one of the eligibility requirements that must be both pleaded and proved, the courts of Pennsylvania no longer had the power to grant post conviction relief to Coss; they simply lacked the jurisdiction to do so. Moyer v. Kirby, supra, 14 Serg. & Rawle at 165.

Coss' entitlement to post conviction had simply self-destructed. His post conviction relief petition, although still physically in the court files, was no longer "pending" within the contemplation of 28 U.S.C. § 2244(d)(2) which provides:

> "(**2**) The time during which a properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment **is pending** shall not be counted toward any period of limitation under this subsection." (Emphasis supplied.).

The 'non-pendency' of Coss' PCRA application derived from the fact that immediately upon Coss' release from custody the Pennsylvania courts lost all power to award Coss any post conviction relief of any sort based upon his January 30, 1987, judgment of sentence and conviction.

The latest date through which Coss' custody could possibly have continued was March 2, 1989. This date of March 2, 1989, also marked the final end of the exclusionary period authorized by 28 U.S.C. § 2244(d)(2).

If Coss' federal habeas corpus petition was to have been regarded as timely, it would have had to have been filed within one year of March 2, 1989, or, not later than March 2, 1990. Coss' habeas filing of his instant petition on May 17, 2001 is just about eleven years, two-and-a-half months too late.

## CONCLUSION

The Court should find and determine that if Coss' federal habeas corpus petition was to have been regarded as timely, it would have had to have been filed within one year of March 2, 1989, or, not later than March 2, 1990 and, because the instant petition was not filed until May 15, 2001, the Court should order that the instant petition be dismissed as untimely.

Respectfully submitted, December 2, 2004.

    s/ *William P. O'Malley*
William P. O'Malley ,Atty. I.D. # 58520
Assistant District Attorney
Lackawanna County Courthouse
200 N. Washington Avenue
Scranton, PA  18503
(717) 963-6717

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2004, I served a copy of the foregoing:

SUPPLEMENTAL MEMORANDUM OF LAW
to Augment Respondents' Memorandum of Law
Filed November 22, 2004

upon Petitioner,

> Mr. Edward R. Coss
> #CB5970
> SCI Dallas
> 1000 Follies Road
> Dallas, PA 18612

by prepaid first class U.S. Mail,

                                                 s/ *William P. O'Malley*
                                              William P. O'Malley
                                              Assistant District Attorney